UNITED STATES
v.
**CLASSIFIED PARKING SYSTEM, Inc.**
No. 14816.

United States Court of Appeals,
Fifth Circuit.
June 25, 1954.

Herman S. Greitzer, Samuel D. Slade Attys., Dept. of Justice, Washington, D. C., John C. Ford, Asst. U. S. Atty., Dallas, Tex., Warren E. Burger, Asst. Atty. Gen., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellant.

Fowler Roberts, Dallas, Tex., for appellee.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellee operated about 80 parking establishments in three cities, approximately 40 of which were in Dallas. On December 16, 1952, the United States filed a civil action against appellee, seeking injunction, treble damages and general relief for alleged violations of a price stabilization regulation issued pursuant to the Defense Production Act of 1950, as amended.[1] The complaint alleged the prices in effect at appellee's Lots Nos. 2 and 9 in Dallas during the "base" period; and in Paragraph 9 alleged that the violations specifically known were set forth in Exhibit A attached. Exhibit A contained in detail the overcharges alleged to have been made at Lot No. 2 from December 15, 1951, through July 9, 1952; at Lot No. 9 from December 15, 1951, through January 21, 1952. The total overcharges alleged were $599.05.

Paragraph 9 of the complaint also contained the statement: "On or before the date of trial plaintiff will produce a supplemental Exhibit A which will contain the itemization of other and additional specific overcharges, in detail, as is now set forth in Exhibit A." Paragraph 11a stated: "Plaintiff is presently unable to allege the specific dollar amount by which the prices charged and received by defendant exceeded the applicable maximum prices, but can, and will, offer proof of such amount at the trial of this cause."

The matter came to trial on June 22, 1953; and after submitting proof of the highest prices charged at the two lots during the base period, the United States tendered the records of appellee's receipts at Lot No. 2 from December 17, 1951, through October 23, 1952. Counsel for appellee objected for the reason that the suit covered only the period alleged in the complaint. The trial court ruled that the complaint restricted the matter to the dates therein alleged, and refused to permit any evidence of violation beyond those dates. He subsequently made the same ruling with respect to Lot No. 9.

Counsel for the United States moved for a trial amendment in order to include all violations from December 16, 1951 (one year prior to the date suit was filed) forward. Upon objection by appellee, the trial court refused to permit amendment.

At the end of its case, the United States offered to prove that the defendant's records did in fact contain information contrary to denials in answer to plaintiff's pretrial requests for admissions. The trial court refused to allow any such evidence to be introduced, and accordingly denied any recovery of costs for plaintiff's alleged expenses in obtaining and proving the information sought by the requests for admissions.

The trial court found that appellee had violated its ceiling price in the total amount of $599.05; that the burden of proving willfulness was upon the plaintiff; that the acts and conduct of appellee were not willful. Judgment was entered in favor of the United States in the amount of $599.05 and $250.00 attorney's fees.[2]

The United States appealed, relying upon the following alleged errors: (1) Paragraphs 9 and 11a of the complaint were sufficiently broad in scope to cover all violations sought to be proved, and it was error to refuse evidence of violations beyond the dates set forth in Exhibit A; (2) in any event, it was an abuse of discretion to refuse trial amendment under Rule 15 of the Federal Rules of Civil Procedure, 28 U.S.C.A.; (3) it was error to hold that the burden of proving willfulness was on the plaintiff, and the trial court consequently erred in holding defendant's violations were not willful; (4) since the violations were in fact willful, it was an abuse of discretion not to award treble damages; (5) the trial judge should have allowed plaintiff to prove that defendant's records contained information contrary to its answers to requests for admissions.

In support of its first point, appellant argues that its pleading conformed to the requirements of Rule 8(a) in that it set forth a claim for injunctive relief and treble damages for violations of price stabilization regulations. It takes the position that the function of notifying the adverse party of the alleged claim was fully satisfied, and that appellee knew it was the government's intention to prove all violations. Appellee concedes that the complaint adequately set forth a claim for relief for violations

which occurred during the periods designated in Exhibit A; but, it argues, having chosen to allege violations only in that period, the government could not offer proof of other violations.

This Court recognizes the principle of the cases cited by appellant —that pleadings shall be liberally construed so as to do substantial justice. On the other hand, a defendant is entitled to know the extent of the claim being made against him, as well as its nature. Considered alone, Paragraphs 9 and 11a of the complaint would seem to indicate that the appellant intended on the trial to submit proof of all violations which it could discover. But certainly their language is ambiguous and general; and when coupled with the specific charges detailed in the attached Exhibit A, they give rise to the fair interpretation placed upon them by appellee and the trial judge—that is to say, that the government was seeking relief only for the violations which occurred during the specific periods set forth. We cannot hold that such an interpretation was clearly erroneous.

Whether or not the trial judge abused his discretion in refusing to grant the trial amendment sought by appellant is an equally close question. We have no hesitancy in holding that he was correct in refusing the amendment insofar as it sought to relate back to one year preceding the date the suit was filed. The amendment was sought on June 23, 1953; and appellant's substantive right to relief for any violations which occurred prior to June 23, 1952, and which had not been alleged in the original complaint, had expired.[3] Whatever the interpretation of Paragraphs 9 and 11a of the complaint, they could not be held suffi-

2. Because the Act had expired, the United States withdrew its prayer for injunctive relief.

3. Section 409(c) of the Defense Production Act of 1950, 64 Stat. 811, provided that the action on account of violations should be brought within one year from the date of such violations. This was substantially the same provision con-

tained in Section 205(e) of the Emergency Price Control Act of 1942 and in the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881 et seq., which had been held to *create* the right only for the duration of the period stated therein. See Leimer v. Woods, 8 Cir., 196 F.2d 828; Meyercheck v. Givins, 7 Cir., 180 F.2d 221; Matheny v. Porter, 10 Cir., 158 F.2d 478.

cient to extend the life of substantive rights indefinitely until the appellant chose to make clear its intention to assert those rights.

As to overcharges occurring after June 23, 1952, the propriety of the judge's ruling again turns on his interpretation of the complaint. Having held that the original complaint did not contemplate relief for violations occurring after the period therein set forth, the trial judge properly took into consideration that limitation and the length of time available to appellant in which it might have amended. Again, we are not unmindful of the liberal interpretation of the rules. Yet, while we may have reached a different conclusion, under the circumstances presented to the trial judge we are not prepared to hold that his refusal to allow amendment was arbitrary and therefore an abuse of discretion. It must be remembered that each violation under the Act created a new claim for relief, and the right of the defendant to know at all times what he is being sued for must be considered. The judge was confronted with the problem of weighing these conflicting interests, and we cannot substitute our judgment for his under the circumstances.

Section 409(c) provided, in part: " * * * the seller shall be liable for reasonable attorney's fees and costs * * *, plus whichever of the following sums is greater: (1) such amount not more than three times the amount of the overcharge * * * as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50 as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge * * * if the defendant proves that the violation * * was neither willful nor the result of failure to take practicable precautions * * *."

■■ Clearly the trial judge was in error when he held that the burden of proving willfulness was upon appellant, for the plain wording of the statute was to the contrary. However, he made the affirmative finding that there was no willfulness on the part of appellee's officers or agents. Being of the opinion that there was ample evidence in the record to support this conclusion, we deem it unnecessary to discuss that evidence in detail.

The last question presented in this appeal also arose from divergent interpretations of ambiguities. In several of its requests for admissions, appellant asked questions of which the following is typical: "Do you admit or deny: * * 7. That defendant's records do not reveal defendant received a higher price than 65¢ per car for parking each car on said lot for a period of four hours or over during the base period." Appellee's typical answer was: "7. The records do not reflect the rate charged for four hours or over."

At the trial, appellant introduced appellee's daily cashier report, which showed a number of "tickets", a rate and an extension column for each lot each day. The testimony developed that cars were parked at various lots without a claim ticket and that different lots had different rates. It also developed that the figures in the rate column varied and the record did not signify the period of time charged for. Neither did it reflect the total number of cars parked under a particular time-period rate. The appellant contended that the number of cars parked and the hourly rate could be computed from this record, and in fact it proved the violations alleged through the computations of an accountant based upon these records.[4] As we appreciate the positions of the parties, appellant contended that its questions included the calculations which could be made from the records, and therefore that appellee improperly denied the existence of the records; while appellee contended that the questions related only to the actual content of the records themselves. Al-

---

4. However, there were quite a few figures in these records which neither the accountant nor appellee's employees could explain.

though the judge did not expressly so rule, he apparently concluded that there were good reasons for appellee's answers.[5]

The evidence shows that from the very beginning of price controls there had existed an apparently bona fide dispute as to the rates charged by appellee. At the time these reports were made, there was no reason for appellee to keep records detailed in the manner contemplated by this action; and it appeared from the testimony that there was considerable dispute and uncertainty among the government's witnesses as to what the records did show or what deductions could properly be made therefrom. Appellee's answers may not have been responsive. However, in view of the manifest confusion in interpreting the data and the manner in which the questions were asked, it cannot be said that appellee refused to admit what was requested in the sense contemplated by Rule 37.

Accordingly, the judgment of the trial court is

Affirmed.

RIVES, Circuit Judge, I dissent.

RIVES, Circuit Judge (dissenting).

With much deference to the opinion of my brothers, I am constrained to dissent. Paragraph 11a of the complaint quoted in the main opinion was followed by paragraph 11b as follows:

"b. All of the transactions complained of herein occurred within one year of the filing of the complaint in this cause."

It seems to me that the averments of the complaint were broad enough to cover all violations of the price stabilization regulation occurring within one year prior to the filing of the complaint on December 16, 1952.

Further, it seems to me that the finding that there was no willfulness on the part of appellee's officers or agents may have been based on the court's admitted

misconception of the burden of proof as to that issue, and, hence should not be allowed to stand. I think that the judgment should be reversed and the cause remanded for retrial, and therefore respectfully dissent.

5. Rule 37(c), Federal Rules of Civil Procedure.